(Decided February 8th, 1878.)

---

WILLIAM THOMAS and MARIA J. THOMAS, his Wife
*vs.* THOMAS HIGGINS.

CONSTRUCTION OF DEEDS.

*Rule in Shelley's Case—Use of the words "Issue" and "Heirs" in deeds and wills—When the word "Issue" used in a deed will be construed a word of purchase, and when not—Modification of legal import of technical words by addition of qualifying words.*

That the rule in *Shelley's Case* is of binding force in Maryland is well settled.

So imperative are the requirements of this rule, when it is applicable, that it will control the operation of the grant and vest the whole estate in the ancestor, though the instrument declares he shall only have a life estate.

Thomas and Wife *vs.* Higgins.

The word "issue" is one of doubtful import; its legal sense is one of very general signification and includes all persons having a common ancestry; but its true interpretation must be found from the connection in which it is used—*noscitur a sociis.*

It may be used in the sense of *heirs,* and if from its connection and association with words of reference it is plain that it is used in that sense, it must be so taken.

The word "issue" used in a deed is construed to be a word of purchase where it occurs without any controlling or modifying expression used in connection with it.

A. B. conveyed certain land, of which he was seized in fee, as follows: "to J. W. and E. W., his wife, for their joint and natural lives, and to the survivor of them during his or her natural life; remainder to D. J. W. and W. W., as tenants in common, during the natural life of each of them; remainder to the heirs of the body of said D. J. W. and W. W. respectively, and in default of such issue living at the time of the death of the said D. J. W. and W. W., respectively, remainder to the heirs of the bodies of said J. W. and E. W., his wife, living at the death of the survivor of them, and in default of such issue, remainder to the heirs ef E. W. in fee-simple."

It was conceded by the appellants that the terms "remainder to the said D. J. W. and W. W., as tenants in common, and during the natural life of each of them, remainder to the heirs of the body of said D. J. W. and W. W., respectively," standing alone would vest the whole estate in them; but they contended that the subsequent words, "in default of such issue living at the time of the death of said D. J. W. and W. W. respectively, &c.," so modified the meaning of the words "to the heirs of the body of said D. J. W. and W. W. respectively," as to make them a particular designation of certain persons as a root from which the inheritance is to emanate. HELD:

That the subsequent addition of the words aforesaid did not operate as a particular designation of certain persons as a root from which the inheritance was to emanate.

APPEAL from the Circuit Court for Dorchester County.

On the 19th day of March, 1841, Daniel Martin, being seized of certain land in fee, by his deed of that date, in consideration of natural love and affection conveyed the same to James A. Waddell and Emmeline, his wife, who was the daughter of the said Martin, for and during their

natural lives and the life of the survivor, the remainder to Daniel James Waddell and William Waddell, his grandchildren and the children of James and Emmeline, as tenants in common during their natural lives, remainder to the heirs of the body of the said Daniel James Waddell and William Waddell respectively, and in default of such issue living at the time of the death of the said Daniel James Waddell and William Waddell respectively, remainder to the heirs of the bodies of the said James A. Waddell and Emmeline, his wife, living at the death of the survivor of them; and in default of such issue living at the death of the survivor, remainder to the heirs of the said Emmeline Waddell in fee-simple. William Waddell died in childhood, soon after the date of the deed, without issue, leaving his brother, Daniel, his heir-at-law. Daniel James Waddell survived his father and mother and died in December, 1873, leaving two infant children, James Waddell and Emily Waddell. Emmeline Waddell, one of the grantees in Martin's deed, died in 1848, leaving three children, Daniel, Maria and Jasper Waddell, the last of whom died before his father. James A. Waddell died the 8th of September, 1873, and at the time of his death the only heirs of the bodies of James and Emmeline Waddell, then living, were Daniel James Waddell and Maria J. Waddell, the female appellant, who intermarried with William Thomas, also appellant. Mrs. Thomas claims by virtue of the gift over to the heirs of the bodies of James and Emmeline, living at the time of the death of the survivor of them, one-half of the estate given to William. The appellee, on the other hand, claims that the gifts over after Daniel and William are inoperative, and contends that they took estates in fee; and on the death of William, the whole became vested in Daniel, as his heir-at-law, subject to the life estates of his father and mother. The Court below held that the rule in *Shelley's Case* applied to the limitations of this deed, and by virtue thereof that

Daniel and William took estates in fee under the said deed.

To these rulings of the Court the plaintiffs excepted and took this appeal.

The cause was argued before BARTOL, C. J., MILLER, ROBINSON, BOWIE and BRENT, J.

*J. W. Crisfield, C..F. Goldsborough* and *D. M. Henry, Jr.,* for appellants.

It is conceded that the rule in *Shelley's Case* has been fully recognized and adopted as the settled law of Maryland.

The appellants do not contest its binding force; they only deny its applicability to this particular case.

The rule in *Shelley's Case* is laid down by Preston in his work on estates, and cited with approbation by this Court in the following words: "When a person takes an estate of freehold legally or equitably, under a deed, will or other instrument of writing, and in the same-instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." The rule in itself is simple and easy of application when the grant or devise uses only the technical terms in which it is framed; the difficulty arises only when those terms are added to or substituted by others, which may or may not be of equivalent importance. The rule itself is a canon for the disposition of property; but whether the rule arises out of the words of the grant, is a question of construction, which for at least two centuries has harassed the judicial mind. The decisions upon it are infinite and not always harmonious. It would be an endless task to

collate them ; and it would be as useless as laborious, as this Court has already defined the rule and its qualifications with a precision which leaves nothing in doubt. In this inquiry therefore, the Court will not be referred to any but its own adjudications. The words of the rule are " heirs " and " heirs of the body ; " these words are technical and have a strictly legal signification, descriptive of the quantity and quality of the estate intended to be conveyed. Thus at common law a conveyance to A. passes only an estate for life, for no more is expressed ; but a conveyance to A. and his heirs, or the heirs of his body, conveys an estate of inheritance descendible in the one case to his heirs generally, and in the other case to the heir of the first taker in the prescribed line of descent. The law will impute no other meaning to these words when used alone. " Heirs " and " heirs of the body " are general phrases, equally comprehending all who may be capable of inheriting ; they point to no one in particular ; and no one being individually designated, he who takes, must take as heir and by descent. He cannot take otherwise. Nor does it alter the case, that the estate is limited to the ancestor for life ; or that to the heirs are superadded words of inheritance, not being individualized, the heirs must take by descent or not at all. Hence it is the first taker must be invested with an estate of inheritance, or the whole object of the grantor or devisor must fail.

This view is more distinctly stated by this Court in *Ware vs. Richardson,* 3 *Md.,* 544. " In cases, therefore," says the Court, " where the word heirs, or heirs of the body are used, they will be construed to limit and define the estate intended to be conveyed, and will not be treated as words of purchase ; and no supposed intention on the part of the testator or grantor, arising from the estate being conveyed in the first instance for life, will be permitted to control their operation as words of limitation. By force of the unbending construction given to these terms, it

imputed to the grantor or testator, in legal contemplation, an intention to use the terms in their legal sense, and to give them legal effect, though it should defeat even a real intention to the contrary."

And to the same effect is the opinion of this Court in *Simpers vs. Simpers*, 15 *Md.*, 138. "We do not mean to be understood," said the Court, "that the use of the words " heirs of the body," has, under all circumstances, this effect. They are susceptible of explanation and qualification ; and if the context plainly shows that they were not used by the testator in their ordinary signification, but were designed to indicate another class of objects less extensive, such as *sons, children, &c.*, then they would be construed so as to effectuate the intention of the testator. Many cases of this sort have arisen, and have been recognized as exceptions to the rule." The Court is also referred to the case of *Lyles vs. Diggs*, 6 *Harr. & John.*, 364, where the same view is expressed.

As thus defined and qualified, this rule is the law of this Court and of this case. It is quite unnecessary to swell this brief by other references. Applying the rule and its qualifications to the deed in question, we can have little or no difficulty in aiming at its true construction.

In the first place, it should be remarked that the rule applies as well to deeds as to wills.

In wills, from the nature of the circumstances under which they are supposed to be prepared, technical terms yield more readily to the expressed intention of the testator, than in deeds; but in each class of conveyances, the same words, used in the same way, mean the same thing. The intention of the parties in each case must prevail, unless it infringes some established principle of law. *Hope vs. Hutchins*, 9 *Gill & Johnson*, 78. The case of *Ware vs. Richardson* arose on a deed, and this Court in that case promulgated the rule and its qualifications, as controlling its construction. We must, therefore, construe

this deed in the same way we would be required to do if it had been a will.

In the next place, we must notice that this deed grants to Daniel and William estates in common, and not joint estates. There is no survivorship between them. They take each an undivided moiety, and on the death of either, his share, irrespective of the other, devolves according to the import of the grant, whatever that may be.

Bearing these suggestions in mind, let us examine the terms of this deed. After providing life estates for James and Emmeline, the parents of Daniel and William, it grants to Daniel and William, as tenants in common, during the natural life of each of them, the lands in question, remainder to the heirs of the body of Daniel and William respectively. If the grant had stopped here, it is clear that it would have been embraced by the rule is *Shelley's Case*, and D. and W. would have taken the fee. Thus far there is nothing to qualify the legal import of the words, "heirs of the body." By force of the rule, the express intent of the testator to give life estates to the first takers will not restrict their legal meaning, for the simple reason that these words point to no one in particular, but comprehend indiscriminately all who may answer the description. In such cases, "heirs of the body," as we have seen, must necessarily be held to be words of limitation. But the grant proceeds, and to these words already quoted, adds, "and in default of such issue living at the time of the death of Daniel and William respectively, remainder to," &c. In construing the grant, these words cannot be rejected; they must be considered and allowed their just weight, whatever that may be. "Such issue" can refer only to the previous words, "heirs of the body," and plainly show that the grantor used the latter words in the sense of the former. This, if nothing more was said in the deed, would solve the question at once against the appellee, for "issue" in a deed is always a

word of purchase. *Horne vs. Lyeth,* 4 *Harr. & Johnson,* 439 ; *Chelton vs. Henderson,* 9 *Gill.*

But the word " issue " in this deed is further explained to be " such issue living at the death of Daniel and William respectively."

This is a *designatio personarum*—a particular designation of certain individuals, who are to take the estate after the termination of their life estates. These individuals, are to be the root from which the inheritance is to emanate. They could not be more certainly designated ; they are the "issue living at the death ;" not issue generally, which would have comprehended all who might be born ; but particular individuals, " issue living at the death." The persons designated to take next after Daniel and William, must have each of two qualities : they must be issue of Daniel and William, and they must be living at the time of the death of Daniel and William respectively ; all in whom these two qualities unite, and no others, are the persons whom the grantor designed should take the estate. Having these qualities, they are just as certainly indicated as the beneficiaries of the grant, as if they had been described by the word *child, son,* or even baptismal name.

The words of the grant in this case are almost identical with those used by this Court in *Ware and Richardson,* in the example given to illustrate the exception to the rule. " For example," said this Court in that case, " the expressions, *heirs now living,* children, issue, &c., are words of limitation or purchase, as will best accord with the manifest intention of him who employs them." In this grant, the words are, " heirs of the body," explained in the grant to be " issue living at the time of the death ;" what possible difference in the respect now considered, can there be between these words and the words, " heirs now living," put by the Court in their example?

They each will be held words of limitation or of pur-
chase, as will best accord with the manifest intention of
him who employs them.

By the rule announced by this Court in *Ware vs. Rich-
ardson,* consistently with every decision which preceded it,
and re-affirmed by every subsequent judgment pronounced
by it upon the question, the intention of the grantor or
donor must prevail unless that intention conflicts with
some established principle of law.    What principle of
law stands in the way of the gratification of his manifest
intention?    Here there is no principle of law to be in-
vaded by following his expressed intention; while on the
other hand, if we apply the rule in *Shelley's Case,* and
enlarge the grant to Daniel and William into a fee, we
frustrate every purpose he had in view, and expressed in
clear and unambiguous words.    To gratify his manifest
intention, we must therefore hold the words, "heirs of the
body living at the time of the death," &c., to be words of
purchase, and not words of limitation, and that the grant
over, in default of such issue, is valid.

But it may be argued, that as there are no words of
inheritance affixed to the gift to the heirs of the body, we
must construe the estate of the first taker a fee, or other-
wise the heirs would only take life estates; in other words,
that there is, in this deed, a particular intent, that Daniel
and William should have estates for life, and a general
intent, that the limitation over beyond the heirs of their
bodies, should not take effect until their blood should be
exhausted; and that to insure the consummation of that
general intent, it was necessary to sacrifice the particular
intent, and read this deed as granting estates in fee to
Daniel and William.    It is conceded, that where there is a
particular intent, and a general intent, which cannot
co-exist, the particular intent must give way to the general
intent.    But this rule is not applicable; here there is no
general intent in conflict with any particular intent.    The

purpose of the grantor in this case was to give the land to Daniel and William for life, as tenants in common, and upon the death of either of them, remainder to his issue, who might then be living, in fee; and if no such issue should then be living, then his purpose was to give it to the issue of James and Emmeline, who should be living at the death of the survivor of them, in fee; and if no such issue of James and Emmeline should be living at the death of the survivor of them, then he designed it to be given to the heirs-at-law of Emmeline. These are alternative limitations, contingent remainders, with a triple aspect; first to the heirs of the body of Daniel and William, if any there should be living at the designated period, if none, then to the heirs of the body of James and Emmeline, if any should be living at the period designated. The event on which the estate is to vest, is the having of issue living at the period designated, in succession. One or the other of the contingencies must happen during the continuance of the particular estates created by the deed, and until one or the other did happen, the fee was not disposed of, but remained in abeyance, or to speak more accurately, the fee remained in the grantor. Either happening, the next and all subsequent gifts become inoperative.

This argument, if made at all, must be based upon the idea that the deed, failing to superadd words of inheritance to the gift to the heirs of the body of Daniel and William, gave such heirs only estates for life. Such would be the common law rule if it still prevailed in this State, and the deed contained nothing to enlarge the gift to a fee. The common law rule has been modified by our Acts of Assembly; and words of inheritance superadded to the gift are no longer necessary to create a fee. Every deed conveying an estate in lands, conveys all the grantor's interest therein, unless otherwise expressed. Here Martin had the fee, it is so recited in the granting clause of his

deed ; and all he had, passed to his grantee. If it be objected, that this deed was made before the adoption of the Code, it is answered that the Code establishes a rule of construction which applies to and governs the construction of all deeds, whether made before or since its adoption ; and the more especially where the title under it had not become a vested estate before the Code went into effect. But whether this be so or not, matters but little. Daniel Martin, in his grant, recited a conveyance to him *in fee* of the lands in question, and declared his purpose to convey to his grantees *all* the interest so conveyed to him. This necessarily passed the fee to his grantees, without express words of inheritance ; the terms used in the granting clause sufficiently declares the intention of the grantor to pass the fee. *Budd vs. Brooke,* 3 *Gill,* 235.

The assumption that this is a fee mounted upon a fee, has no existence. The fee is given but once ; on the happening of a certain contingency, the grantor gives the fee to one or more donees ; on the failure of that and the happening of another contingency, to another donee ; and on the happening of another contingency, to a third donee. Each is the alternative of the other ; the fee can vest only in one of the three ; and vesting in one, the other gifts become inoperative.

From these views, which are fully sustained by the judgments of this Court already referred to, and might be further supported by innumerable citations, it is apparent that the rule in *Shelley's Case* does not apply to the grant to Daniel and William Waddell, and that they took only estates for life. The Court below decided otherwise, and to that extent, at least, its judgment is erroneous and should be reversed.

*Sewell F. Milbourne,* for appellee.

BRENT, J., delivered the opinion of the Court.

The questions arising upon this appeal, depend upon the construction of a deed executed by a certain Daniel Martin, wherein he conveyed on the 19th of March, 1841, the land in controversy as follows:

"Unto James A. Waddell and Emmeline, his wife, for their joint and natural lives, and to the survivor of them during his or her natural life, * * * * remainder to the said Daniel James Waddell and William Waddell, as tenants in common, during the natural life of each of them; remainder to the heirs of the body of the said Daniel James Waddell and William Waddell respectively, and in default of such issue living at the time of the death of the said Daniel James and William respectively, remainder to the heirs of the bodies of the said James A. Waddell and Emmeline, his wife, living at the death of the survivor of them, and in default of such issue living at the death of the survivor as aforesaid, remainder to the heirs of the said Emmeline Waddell in fee-simple."

Upon the facts, as set forth in the agreed statement of counsel, the first and main question to be determined, is, what estate did Daniel and William take under the terms of this deed? That the rule in *Shelley's Case* is of binding force in this State is well settled, and it is so recognized in the briefs filed by the respective counsel.

This rule is so fully set out in the decisions of this Court, and especially in the cases of *Ware vs. Richardson*, 3 *Md.*, 544, and *Simpers' Lessee vs. Simpers*, 15 *Md.*, 160, that it is unnecessary to repeat it here. So imperative are its requirements when it is applicable, that it will control the operation of the grant and vest the whole estate in the ancestor, though the instrument declares he shall only have a life estate.

It is claimed on the part of the appellee, that it controls the estate taken by Daniel and William Waddell under the deed in question. The appellants, while they concede

that the terms, "remainder to the said Daniel and William as tenants in common, during the natural life of each of them, remainder *to the heirs* of the body of the said Daniel and William respectively," standing alone would vest the whole estate in them, contend that the subsequent words "in default of *such issue* living at the time of the death of the said Daniel and William respectively," &c., so modify the meaning of the words "*to the heirs of the body* of the said Daniel and William respectively," as to make them a particular designation of certain persons as a root from whom the inheritance is to emanate.

This narrows very much the question presented, and leaves us to consider whether the legal meaning of the word *heirs* is modified by the subsequent words "*such issue living at the time of the death,*" &c. The word *issue* is one of doubtful import. Its legal sense is one of very general signification and includes all persons having a common ancestry. Its true interpretation must be found from the connection in which it is used, *noscitur a sociis.* It may be used in the sense of *heirs,* and if from its connection and association with words of reference it is plain that it is used in that sense, it must be so taken. In the deed before us its use, in connection with the word *such,* refers back to the words *heirs of the body,* and these latter words must be held as a guide and index to the sense in which it is to be construed. When the grantor therefore says, *in default of such issue living, &c.,* he must in legal contemplation be held to mean in default of such issue of the brothers, living at the time of their death, who may be regarded, as described and designated by the preceding words, *heirs of the body of the said Daniel and William.*

The word *issue* used in a deed, it is true, as argued by the counsel for the appellants, is construed to be a word of purchase, *Horne vs. Lyeth,* 4 *H. & J.,* 439; *Chelton vs. Henderson,* 9 *G.,* 432, but this is where it occurs without any controlling or modifying expression used in connection

with it.   We have not been referred to any case, nor have we found one, in which it is held to modify the meaning of the word heirs, when used as it is in the present deed. On the contrary, in the case of *Simpers vs. Simpers*, 15 *Md.*, 187, the expression *heirs of the body* is followed by the words *such issue*. Yet in that case the rule was applied and the ancestor took the whole estate.

Nor do the additional words, *living at the time of the death*, &c., alter or affect the rule.   The use of them would be important, if the question presented was one of an indefinite failure of issue, but how they can be understood as modifying the term *heirs*, and showing that the persons meant thereby were not to take as heirs of and through the ancestor, is not perceived.   His estate descends at his death to his heirs then living.   They and none others are capable of taking by inheritance from him.   So that the addition of the words *living at the death*, &c., give no other designation to the word *heirs*, than is supplied by the law without them.

We think the rule in *Shelley's Case* very clearly controls the present deed, and that Daniel and William Waddell, immediately upon its execution, took as tenants in common a fee-tail at common law in the lands granted, which estate under our statute law is converted into and becomes a fee-simple.

William Waddell, who thus became entitled in fee to an undivided moiety, died in infancy, leaving his brother Daniel the only other child of their parents then living. Some years afterwards the appellant, Maria J. Thomas, a sister, was born, and the question is presented, whether she inherited any part of this estate of William.   This is settled by the Act of 1820, ch. 191, sec. 2, codified in section 25 of Art. 47 of the Code, which provides that "no right in the inheritance shall accrue to or vest in any person, other than to children of the intestate and their descendants, unless such person is in being and capable in

law to take as heir at the time of the intestate's death."
As Maria, the appellant, was not born until long after the
death of William, she does not therefore take any part of
his moiety of the land in question, but the whole of it
descended to Daniel.

It follows that we agree with the Court below in the
view taken by them of the law, and the judgment will be
affirmed.

*Judgment affirmed.*

(Decided February 15th, 1878.)