(Decided 12th March, 1880.)

GEORGE B. DICKSON *vs.* WILLIAM C. SATTERFIELD and GEORGE H. MOORE, Adm'rs d. b. n. c. t. a. of M. E. A. REED.

*Construction of a Will—Rule in Shelley's Case—Jurisdiction of the Orphans' Court.*

The will of R. admitted to probate in 1855, contained the following clause: "To my cousin, E. B., I will and bequeath the late residence of my father, in Greensboro', consisting of one lot, a two-

story double house, stone house, granary, carriage-house and stable and all the buildings thereon, during her life; and in case of her death without issue, I direct that it be sold, and the proceeds given to the Home and Foreign Missionary fund of the Maryland Protestant Episcopal Church, at Baltimore; I will to her my eight day clock, during her natural life, and then if she die without a will, to W., daughter of my aunt S. and her heirs forever." In March, 1878; E. B. died without issue. In April, 1878, letters of administration *d. b. n. c. t. a.* on R's estate, were granted to the appellees; whereupon, they proceeded to sell the above mentioned property, and reported the sale to the Orphans' Court. On exceptions by the appellant, an heir-at-law of E. B., to the ratification of the sale, it was HELD:

1st. That E. B. took an estate in fee simple in the property devised to her, from the time the will became operative.

2nd. That as the Orphans' Court had no jurisdiction over the property, the sale should be set aside.

APPEAL from the Orphans' Court of Caroline County.

In addition to the statement of the case in the opinion of the Court, it appears from the proceedings, that Elizabeth Baynard died unmarried and without issue, in March, 1878, and that the appellant claimed to have an interest in the real estate devised to Miss Baynard, as one of her heirs-at-law.

The cause was submitted to BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY, and IRVING, J.

*P. W. Downes, M. S. Mutchler* and *J. W. Bryant,* for the appellant.

*Edwin H. Brown,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The will of Mary E. A. Reed is dated 15th March, 1847, and was admitted to probate in July, 1855. In April,

Dickson *vs.* Satterfield, *et al.*, Adm'rs.

1878, the executor to whom letters testamentary had been granted being dead, the Orphans' Court of Caroline County granted letters of administration *de bonis non c. t. a.* to William C. Satterfield and George H. Moore. On their application for an order to sell certain real estate devised to Elizabeth Baynard for life, "and in case of her death without issue," directed to be sold and proceeds disposed of as the will directed, the Orphans' Court directed the sale. The administrators *d. b. n. c. t. a.* made the sale, and reported it to the Court. An order of ratification *nisi* was passed and published; when exceptions to the ratification were filed by the appellant. These exceptions were overruled, the sale was ratified, and appeal taken.

The exceptions are: "1. That the administrators *d. b. n. c. t. a.* were not authorized to make the sale.

"2. That the *cestui que trust* named in the will of the said Mary E. Reed was, and is not a corporate body, and has no existence.

"3. That the alleged power of sale in said will depends on a contingency which may or may not happen, and is therefore void.

"4. That under the item of said will in which said alleged authority is claimed, Elizabeth Baynard, late of Caroline County, deceased, took a fee simple estate."

In effect all these exceptions mean but one thing, that the devise over, in the event of the death of Elizabeth Baynard without issue, is void, and as the object of the sale no longer exists, the sale cannot be made; and the property must be left without sale, to the heirs-at-law of Elizabeth Baynard, to whom it is alleged the property passes in fee. The clause of the will on which the question arises is as follows: "To my cousin, Elizabeth Baynard, I will and bequeath the late residence of my father in Greensboro', consisting of one lot, a two story double house, stone house, granary, carriage house and stable, and all the buildings thereon, during her life; and in case

of her death without issue I direct that it be sold and the proceeds given to the Home and Foreign Missionary fund of the Maryland Protestant Episcopal Church at Baltimore ; I will to her my eight-day clock during her natural life, and then if she die without a will, to Sarah Anne Warren, daughter of my aunt, Sarah White, and her heirs forever."

The first object in construing a will is to ascertain the intent of the testator, if possible from the language of the whole will, and then to give it effect, if consistent with the rules of law. Here the devise is to Elizabeth Baynard for life. She is the first object of bounty in this bequest.

" In case of her death without issue " there is a devise over to the " Home and Foreign Missionary fund of the Maryland Protestant Episcopal Church." If she has issue the charitable bequest is not to take effect. The inference, therefore, is irresistible that the testator intended that if Elizabeth Baynard had issue, that such issue should have and enjoy the property ; for it would be, in the language of Mr. Jarman, " attributing the grossest absurdity to the testator," to suppose she intended her missionary charity to fail because of the first object of her bounty having issue, unless she intended that issue should enjoy her bounty in preference to the charitable object to which she gave the property in the event of there being no such issue. 1 *Jarman on Wills*, 431.

If issue in this will is to be regarded in its usual and technical sense as meaning the same as " heirs of her body," the devise being Elizabeth Baynard for life, follow by a devise to her issue, the word issue must be construed under the operation of the rule in *Shelley's Case*, as a word of limitation, and not as a word of purchase, and the two estates would coalesce and form an estate tail general in the first taker. The Vice-Chancellor in *Mackell vs. Weeding*, 8 *Simons*, 4, says, in a case of like character; " I consider it to be a settled point that whether an estate be given in

fee *or for life,* or generally without any particular words to limit its duration, if it be followed by a devise over in case of the devisee dying without issue, the devisee will take an estate tail.'' 1 *Jarman,* 447. Unless there be something in the context of the will to rescue the word " issue " from its ordinary and technical signification, or to indicate with reasonable certainty that the testatrix intended to create in the issue a new stock of inheritance, Elizabeth Baynard must be held to have taken the fee; for our statute converts all estates tail general into fee simple estates.

In the case of *Shreve vs. Shreve,* 43 *Md.,* 382, and *Timanus vs. Dugan,* 46 *Md.,* 420, relied on by the counsel of the appellees as controlling the construction of this will, there were superadded words which indicated to the mind of the Court, a clear purpose on the part of the testators to create in the issue a new stock of inheritance, and also to restrict the meaning of the word issue. It was the presence of such words in the context, and superadded to the word issue, that compelled the Court to the conclusion that the testators did not mean to give the fee to the first takers.

In *Shreve vs. Shreve,* the Court distinctly announces that the rule in *Shelley's Case* is a part of the law of Maryland, and to be applied in all cases where the language of the will does not disclose a contrary and clearly defined purpose, that the effect of that rule shall not take place. In *Thomas vs. Higgins,* 47 *Md.,* 439, the rule was afterwards applied in the case of a deed where the word issue was so used as to raise the question. It is true, that in wills the word issue is more flexible than in deeds, and all technical words are, in wills, treated with less strictness in the effort to reach the true meaning of the testator. But when the will gives no clue by which the intention of the testator can be seen to have been not to use the words technically, the technical meaning will be applied.

Dickson *vs.* Satterfield, *et al.*, Adm'rs.

In this will there are no words superadded to the word issue, nor are there any words in the context upon which we can lay hold, that will enable us to say that this testatrix did not mean the word *issue* to embrace the whole line of descendants that might proceed from her devisee, or that she intended the failure of issue, provided against by the devise over, to be any thing other than an indefinite failure of issue. A long line of authorities in this State have established the meaning of the words "dying without issue," and the like to be, when applied to real estate, an indefinite failure of issue which made the devise over in such event void. This will having been made, (and the testatrix having died) anterior to the Act of 1862, which gave a statutory meaning to such words and made such failure relate to the death of the testator, it cannot be affected by that statute, according to the ruling of this Court in *Estep's Case,* 52 *Md.* In our opinion therefore, Elizabeth Baynard took a fee in the property devised to her, by the operation of the principles and rules which we have mentioned.

Such being the true construction of the will in this regard, the only remaining question is, was the sale of the property mentioned in that clause of the will, rightfully made and ought it to stand.

It is proper to notice that this sale is not being questioned collaterally, but is assailed directly in the Court directing it to be made, on the question of ratification; and it would be a great injustice to the fee owners to make them take the proceeds of sale, less expenses and commissions, when the sale can be arrested and set aside without injustice to the purchaser. Although he may have bought without notice, the objections came before his purchase was perfected. If we were regarding this case in an equitable aspect only, there would be good ground for reversal. Justice WASHINGTON, in *Craig vs. Leslie,* 3 *Wheaton,* 583, says the rule is well established in equity that where the

Dickson *vs.* Satterfield, *et al.*, Adm'rs.

*cestui que trust* is entitled to the whole benefit of the fund proceeding from the sale of real estate ordered to be sold, he will be permitted, at his election, to take the real estate itself instead of the proceeds. We are, however, clearly of opinion that the sale should be set aside as a matter of law. The sale was only to be made in a certain contingency, and for a certain purpose. The purpose is defeated because the contingency on the happening of which only the sale was to be made is void by the rules of law, and therefore the contingency does not arise on which the sale was predicated. Elizabeth Baynard, by the devise, took an absolute estate, a fee in the property from the time the will became operative, and, therefore the Orphans' Court had no jurisdiction over it. It was no longer a part of the estate of the testatrix, to be the subject of its orders.

The order of the Orphans' Court ratifying the sale will be reversed and cause remanded, that the sale may be set aside.

*Order reversed, with costs,*
*and cause remanded.*

(Decided 12th March, 1880.)