# LEVI D. TRAVERS, Trustee, vs. JAMES WALLACE ET AL.

*Devise and Legacy—Rule in Shelley's Case—Executory Devise—Res Adjudicata—Order Directing Investment of a Fund by a Trustee Held Not to be a Construction of a Will.*

The rule in *Shelley's case* is a rule of property, and when applicable to a devise disregards the intention of the testator.

Where an estate is devised to A for life and then to the heirs of his body, which the rule in *Shelley's case* converts into a fee-simple in A, then an executory devise of the estate to other parties, in the event of the death of A without such issue living at the time of his death, is void.

A testator devised certain land to his daughter, Sarah, during her natural life, and then to the heirs lawfully begotten of her body, and "for want of such issue " living at the time of Sarah's death, then to W. H. H. R. and Susannah. Sarah married and had issue. A bill in equity filed in 1854, in the Circuit Court of the county where the land lay, the above-mentioned persons being parties, recited the provisions of the will and alleged that it would be for the interest and advantage of all the parties that the land be sold and the proceeds invested in some productive fund. A sale was decreed and made. The auditor's report, which was ratified, distributed the proceeds to Sarah, subject to the contingencies provided for in the testator's will, and the trustee was directed to invest such proceeds in a mortgage "for the use of the parties to abide the contingencies mentioned in the will," and to pay to Sarah during her life the interest of the fund. The trustee paid the entire proceeds of the sale to Sarah, taking from her a mortgage making the fund repayable under the said contingencies. In 1858, Sarah bought out the supposed contingent interest of Susannah and the trustee, under an order of Court, released the mortgage and took another for one-half of the fund from a third party which was to be void if Sarah should die without issue. In 1899, after the death of Sarah and of the trustee, a son and certain grandchildren of Sarah, by the plaintiff substituted trustee, filed the bill in this case against the heirs and legatees of the original trustee alleging that he had failed to administer the trust properly and calling for an account of the proceeds of said sale upon one of two alternative grounds: (1.) That Sarah took only a life-estate in the land devised, with contingent remainders to her children, and consequently the trustee had no authority to pay over to her the whole proceeds of sale, and that his heirs are bound to make good the loss to the estate ; or (2.) That even if, according to the true construction of the will, Sarah took an estate in fee, yet the Circuit Court had construed the will as giving her only

a life-estate and that construction, not having been reversed, is now the law of the case, binding on all the parties. *Held,*

1st. That the devise to Sarah for life with remainder to the heirs of her body operated, by virtue of the rule in *Shelley's case,* to give her an estate in fee-tail, which the Statute to Direct Descents converted into an estate in fee-simple.

2nd. That the words used in the attempt to create an executory devise in favor of W. H. H. and Susannah do not prevent the rule from applying and the executory devise is void.

3rd. That the order of the Circuit Court directing the funds arising from the sale of the land to be invested to await the happening of the contingencies named in the will was erroneous, but did not constitute a construction of the will, and it was never adjudicated that Sarah took only a life-estate, and consequently the defendants may rely, in bar of the plaintiffs claim, upon the fact that the trustee paid the proceeds of sale to the person legally entitled thereto.

Appeal from a decree of the Circuit Court for Dorchester County (LLOYD, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Sewell T. Milbourne* and *John Prentiss Poe* (with whom was *James Higgins* on the brief), for the appellant.

*George R. Gaither* and *Clement Sullivane* (with whom was *Phillips L. Goldsborough* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

In eighteen hundred and forty-three Hooper Rawleigh executed a last will and testament which was admitted to probate in eighteen hundred and forty-six. By the *fifth* item of the will the following provision was made: " I give and devise unto my daughter Sarah Hooper and her mother Eliza, to my daughter two-thirds and her mother one-third during her widowhood or their natural life and then to the heirs of my daughter Sarah Hooper lawfully begotten of her body, and for want of such issue living at the time of my said daughter's death then to go to William H. H. and Susannah Rawleigh her brother and sister, the following lands, subject to an an-

nuity of twenty-five dollars hereafter mentioned, all that part
and parcel, &c., &c." During her minority Sarah Rawleigh
married John L. Thomas. Later on a son was born and was
named Herman L. Thomas. In October eighteen hundred
and fifty-four John L. Thomas as next friend of Sarah Raw-
leigh Thomas, his wife, who was still under twenty-one years
of age, filed a bill on the equity side of the Circuit Court for
Dorchester County against Sarah R. Thomas, Herman L.
Thomas, their infant son, and William H. H. Rawleigh and
Susannah Rawleigh, who were also infants; but Eliza Rawleigh,
the widow of the testator, was not made a party to the pro-
ceeding. In this bill it was averred that two-thirds of the land
mentioned in the fifth item of Hooper Rawleigh's will, had been
devised to Sarah Rawleigh (then Sarah Rawleigh Thomas),
during her natural life "and then in fee to her issue living at
the time of her death, and for want of an issue so living at the
time of her death then to William H. H. Rawleigh and Sus-
annah Rawleigh, as by reference to said last will and testament
will more fully appear, and the same is herewith exhibited and
prayed may be considered as a part of this bill." The bill then
charged that it would be for the interest and advantage of all
the parties to the suit that the "real estate be sold and the
fund arising from the sale thereof be invested in some more
productive fund and divided among the parties interested in
due proportion of law." A decree was in due course signed
ordering a sale, and Col. James Wallace was appointed trustee
to make the sale. In December, eighteen hundred and fifty-
four, and in March, eighteen hundred and fifty-five, Col. Wal-
lace made sales of the lands and subsequently reported the
sales to the Court and the report was thereafter finally ratified
and confirmed in July of the year last named. Later on the
auditor stated two accounts. In one he allowed Sarah Raw-
leigh Thomas a certain proportion of the proceeds of sale on
the theory that she had only a life-estate in the lands under
the will of her father, and the balance of the proceeds he aud-
ited to Herman L. Thomas, the infant son of Mrs. Thomas,
and to such other issue of Sarah Thomas as might be living at

her death, and if no issue were then living, then to William H. H. and Susannah Rawleigh. In the other account the auditor distributed to Sarah Thomas the entire net proceeds of the sales, subject to the payment of an annuity of twelve dollars and a half *per annum* to Susanna Rawleigh, and subject also to the contingencies provided for in Hooper Rawleigh's will. This latter account was ultimately ratified and confirmed, and in the order of ratification the trustee, Col. Wallace, was directed to invest in mortgage or on judgment the funds awarded to Sarah Thomas, "for the use of the parties to abide the contingencies mentioned in the will of Hooper Rawleigh and to pay over to her during her life the interest of the said fund annually as the same shall accrue." In execution of this direction the trustee on the eighteenth of March, eighteen hundred and fifty-six, "advanced and let out to" John L. Thomas and Sarah Thomas, the whole of the net proceeds of sale and took from them a mortgage to secure the repayment of the fund in the event of its becoming repayable under any of the contingences mentioned in the fifth clause of Hooper Rawleigh's will. In eighteen hundred and fifty-eight, Mrs. Thomas bought out the supposed contingent interest of her sister, Susannah, and this fact was reported to the Court by the trustee. Thereupon, that is, on December the twenty-fourth, eighteen hundred and fifty-eight, an order was passed directing the trustee to release the mortgage of March the eighteenth and to pay over to Sarah Thomas free from all contingency one-half of the fund secured by said mortgage and to invest the other half in some mortgage or judgment binding upon real estate "to abide the contingencies provided in the last will and testament of Hooper Rawleigh and the future order of (the) Court and pay over annually to said Sarah during her natural life the interest of the residue of said fund as the same shall accrue." When this order was passed Mrs. Thomas was in the possession of the *whole* of the proceeds of the sales, they having been paid over to her in March, eighteen hundred and fifty-six, as the recitals in the mortgage of that date distinctly show. Under the authority given by

the order of December the twenty-fourth, the trustee released the mortgage made by Thomas and wife and took from Eliza Rawleigh a mortgage for one-half of the net proceeds of sale. This mortgage was to be void if the mortgagor, who was the mother of Mrs. Thomas, should pay to Col. Wallace for the use and benefit of William H. H. Rawleigh, the sum named therein, in the event of Mrs. Thomas dying without issue. This was the last step taken in the case until eighteen hundred and ninety-nine. Mrs. Thomas died in January, eighteen hundred and eighty-eight. Eliza Rawleigh, widow of Hooper Rawleigh, died in April, eighteen hundred and sixty-six, and Col. Wallace, the trustee, died in February, eighteen hundred and eighty-seven. On January the twenty-fourth, eighteen hundred and ninety-nine, Herman L. Thomas, the son of Sarah Thomas, and several other persons who are the children of a deceased daughter of Mrs. Thomas, filed a petition in the original equity case, wherein, forty-five years before, Col. Wallace had been appointed trustee; and in that petition the death of Sarah Thomas and of Col. Wallace was stated and the appointment of a new trustee was asked for. In September, eighteen hundred and ninety-nine, the appellant, who had been appointed trustee in the place of Col. Wallace, as requested in the petition just referred to, filed the bill now before us, and filed it against the heirs at law and legatees of Col. Wallace. In the bill it was alleged that Col. Wallace had failed to administer the trust and his heirs at law and legatees were called on to account to the new trustee for the funds which had gone into the hands of Col. Wallace upon the sale by him in eighteen hundred and fifty-four and fifty-five, of the real estate heretofore mentioned. The defendants demurred to the bill. The Circuit Court for Dorchester County sustained the demurrer and dismissed the bill and from that decree the pending appeal was taken by the new trustee.

There are two alternative grounds upon which relief is sought in this proceeding by the new trustee against the heirs and legatees of Col. Wallace. One is, that Mrs. Thomas took

merely a life-estate in the land disposed of by the fifth clause of her father's will, with contingent remainders over to her children, followed by an executory devise in favor of her brother and sister ; and that, therefore, Col. Wallace. had no authority to turn over to her the proceeds of sales that had been received by him. He, however, having turned over to her those proceeds without providing an adequate security for their repayment upon the death of Mrs. Thomas, it is maintained, became liable to the trust estate to restore the funds, and being now· dead his heirs and legatees are bound to make good the loss. The other alternative is, that even if under a correct interpretation of the will of Hooper Rawleigh, his daughter, Mrs. Thomas, took an estate in fee, yet the construction placed upon the will by the Circuit Court for Dorchester County in the proceedings instituted in eighteen hundred and fifty-four and hereinbefore alluded to, restricted her to a life-estate ; and that this construction, never having been reversed, must stand as the law of the case. and is conclusively binding on all parties and privies, and, therefore, that the heirs and legatees of ;the former trustee are bound to make good out of the property and assets received by them, the funds which Col. Wallace should have preserved for the benefit of the children of Mrs. Thomas. If either of these alternatives be well founded then Col. Wallace érred in paying over the funds to Mrs. Thomas. It consequently becomes necessary to· examine both alternatives. If both be untenable then the decree appealed against must be affirmed without reference to other questions that have been raised and discussed.

· First, then, what estate did Mrs. Thomas take under·the will of her father ? It is a settled and inflexible rule of property, so firmly embedded in our jurisprudence as to be beyond modification or repeal except by legislative enactment, that when a person takes an estate of freehold, legally' or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his.

body, as a class of persons to take in succession from genera-
tion to generation, the limitation to the heirs entitles the ances-
tor to the whole estate.   1 *Preston on Estates*, 263.   This doc-
trine is called the *Rule in Shelley's case*, 1 Co. 104.   It has
nothing to do with the testators intention.   It is a rule of
property and overrides the intention.   In fact wherever appli-
cable, it may be said that it disregards the intention altogether ;
for whilst the intention may confessedly have been to give but
a life-estate the rule converts that life-estate into a fee by treat-
ing the terms of the gift over to the heirs as a limitation of the
estate and not as words of purchase.   Now, the gift under the
*fifth* clause of Hooper Rawleigh's will falls squarely within
the rule.   The devise was to Sarah, the daughter, for life with
remainder to the heirs of her body, lawfully begotten.   This
created an estate in fee-tail in the daughter, which by force of
our statute to direct descents was converted into an estate in
fee-simple, unless the subsequent words employed in the effort
to create an executory devise in favor of William and Susannah
prevent the rule from applying.   These words are : " And for
want of such issue living at the time of my said daughter's
death, then to go to " William and Susannah, her brother and
sister.   If the word " issue " modifies the meaning of the an-
tecedent word " heirs," so as to make the latter a designation
of certain persons as a root from whom the inheritance is to
emanate, then the word "heirs" is not a word of limitation but
a word of purchase and the rule has no application.   " The
word *issue* is one of doubtful import.   Its legal sense is one of
very general signification and includes all persons having a
common ancestry.   Its true interpretation must be found from
the connection in which it is used.   It may be used in the
sense of heirs, and if from its connection and association with
words of reference, it is plain that it is used in that sense, it
must be so taken." *Thomas* v. *Higgins*, 47 Md. 439.   The
sense in which the word issue is used in the fifth clause of
Hooper Rawleigh's will is perfectly obvious.   The gift was
made to the daughter for life and then to the *heirs* of her body
lawfully begotten.   For want of " *such* issue," that is to say

.for want of heirs of her body lawfully begotten, the attempted
devise over to the brother and sister was made.    The word
*such* preceding the word issue unmistakably relates back to
the word heirs of the daughter lawfully begotten of her body,
because there is no other antecedent to which it is or can be
referable.    " Such " is equivalent to " of that kind," and if this
synonym of " such" be read in its stead the clause would
stand : " And for want of that kind of issue living, &c."    That
kind of issue would indicate the kind previously mentioned,
and the kind previously mentioned are heirs of the body law-
fully begotten.    It is manifest, then, that the word, issue, is re-
stricted by the adjective, such, to the antecedently mentioned
heirs of the body, and this being so there is nothing in the
clause to prevent the rule in *Shelley's case* from being operative
unless the attempt to limit the estate over to the brother and sis-
ter should have that effect.    When the testator said, " And for
the want of such issue living at the time of my said daughter's
death," he must in legal contemplation be held to have meant
in default of such issue of the daughter living at her death,
who may be regarded as described by the preceding words
" heirs of my daughter   *   *   *   lawfully begotten of her
body."    As it is obvious that all persons who would answer
the description of heirs of the daughter would be entitled to
the estate before the devise over to the brother and sister could
take effect, it was essential that the daughter should take an
estate tail ; and taking an estate tail, the devise over neces-
sarily failed, because the statute converted the estate tail into an
estate in fee.    *Simper's Lessee* v. *Simpers*, 15 Md. 160; *Thomas*
v. *Higgins*, 47 Md. 439; *Dickson* v. *Satterfield*, 53 Md. 317.

Secondly.  There remains the second alternative, namely,
did the Circuit Court for Dorchester County construe the will
to confer but a life-estate upon Mrs. Thomas?   It is apparent
that the bill filed for a sale of the devised land did not *ask* for
a construction of the will and no decree was passed placing
an interpretation upon it or declaring what estate Mrs. Thomas
took.    The object of the bill specifically was to procure a de-
cree for the *sale* of the land so that the proceeds might be in-

vested.    The Court was not called upon and upon appellants
own theory could not have been asked to construe the will at
that period of time.    *Wahl* v. *Brewer*, 80 Md. 237.    It is true
as already observed that the bill stated that the will gave Mrs.
Thomas a life-estate with remainder to her issue in fee ; but it
exhibited the will in conjunction with that averment.    If the
. statement of the bill be treated as a statement of the legal
effect of the will then it was an inaccurate statement ; but if it
be regarded as merely a recital of the language of the will,
then, though not strictly correct, it was not an averment of
its legal effect.    There was obviously a misapprehension on
the part of the draftsman of the bill as to what estate had been
given to Mrs. Thomas.    Taking, as we hold she did take, an
estate in fee-simple in the land, under the rule in *Shelley's case*
and by virtue of our statute, she was entitled to the funds
arising from the sales of the real property.    But there seems
to have been some notion that there was a valid devise over
to her brother and sister, and, therefore, the funds were di-
rected to be invested to await the happening of what were
called the contingencies named in the will.    This action was
erroneous, but it did not constitute an interpretation of the will
in such a way as to alter its real meaning or to cut down her
estate in fee to one for life.    There is nothing in the record to
show that the Court ever declared by decree or order that
Mrs. Thomas took but a life-estate ; and it would be stretch-
ing the doctrine of *res adjudicata* to a most unreasonable ex-
tent if we were to hold that what was done with respect to the
investment and reinvestment of the funds amounted to, or in-
ferentially included, an adjudication that she had taken merely
a life-estate in the property.    If inferences are to be appealed
to they all point in the opposite direction.    The rejection of
the audit which was stated upon the theory that Mrs. Thomas
had only a life-estate and the ratification of the one which was
founded on the postulate that she was entitled to the whole
fund, are circumstances totally at variance with the suggestion
that the Court had actually determined that the extent of her
interest was merely as life tenant.    The order of December

twenty-fourth directing an investment of one-half of the fund to abide the contingencies provided in the will and to abide the future order of the Court is not consistent with a final adjudication definitely settling her rights.

All the purchase money arising from the sales made nearly a half century ago was turned over by Col. Wallace to Mrs. Thomas. She was entitled to receive it. It belonged to her. After the lapse of so many years and after the death of all the parties to the original transaction, the son and grand-children of Mrs. Thomas now demand from the heirs and legatees of the deceased trustee, that this same fund be paid over to them, not because it really belongs to them under the will of Hooper Rawleigh, but because, according to their contention, the legal effect of certain orders passed a long while ago, was a construction of the will, and which though an erroneous construction, awarded to them that which did not belong to them.

As we find nothing in the record to show that the Court ever adjudged what estate Mrs. Thomas took under her father's will, there is nothing to indicate that it placed any interpretation on the will at all. There is nothing, then, in the old equity proceedings to prevent the heirs and legatees of Col. Wallace from relying on the rule in *Shelley's case*. The demurrer to the bill was, in our opinion, properly sustained and the decree appealed against will be affirmed with costs.

> *Decree affirmed with costs, above and below.*

(Decided June 12th, 1901.)