BOARD OF SUPERVISORS OF ELECTIONS
OF BALTIMORE CITY *v.* WEISS ET AL.

[No. 46, September Term, 1958 (Adv.).]

*Decided, per curiam, May 5, 1958.*

*Opinion filed May 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Charles B. Reeves, Jr., Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellant.

*Hyman A. Pressman* for the appellees.

Horney, J., delivered the opinion of the Court.

On May 5, 1958, a majority of this Court, being of the opinion that the writ of *mandamus* was properly issued by the Baltimore City Court, filed a *per curiam* order affirming the ruling of Judge Warnken in this case. We set forth below our reasons for so doing.

Harold M. Weiss and others (the petitioners) are registered voters and candidates for public office who challenged the registration of 219 other voters in one of the election precincts in Baltimore City. Alleging that the challenged voters had not lived in the precinct within the past six months because their homes had been razed to make way for the erection of the new State Office Building, the petitioners requested Charles A. Dorsey and others, members of the Board of Supervisors of Elections of Baltimore City (the Board), to hold hearings with regard to such challenges on Tuesday, May 6, 1958, that is, two weeks before the primary election to be held on May 20, 1958. The Board refused to hold the hearings, contending that Code (1957), Art. 33, § 41 (b), requires a hearing with regard to challenges only before a *general* election. The petitioners then filed a petition for a writ of *mandamus* to compel the Board to hold the hearings requested. From the issuance of the writ the Board appealed.

The sole issue in this case, an extremely narrow one, is whether Section 41 of the 1957 Revised Election Law, codified as Code (1957), Article 33, permits the challenge of registrations before a primary election. Sub-section (a) of Section 41 provides:

> "Any voter may file with the board of supervisors of elections, * * * objections to the registration of any person whom such voter has reason to believe is not eligible to vote, or a request for the addition of any person whose name has been erroneously omitted or dropped from the registration list of any precinct. Application for the correction of any such precinct registration list or a challenge of the right to vote of a person named on such list may be made by any qualified voter of the county or city, as the

case may be, at the office of the Board of Supervisors in Baltimore City on or before the Tuesday three weeks preceding *such election,* and in the counties seven weeks preceding *such election.*" (Emphasis added).

Sub-section (b) of Section 41 provides that the boards "shall meet on the Tuesday two weeks before *an election* in Baltimore City, and on the Tuesday six weeks before *an election* in the counties, at such hours as the boards of supervisors may designate." (Emphasis added).

Although a definition of "election" is not set forth in Section 41, *supra,* Section 205 of Article 33 clearly states:

"The word 'election' as used in this article shall be construed to include elections had within any county or city for the purpose of enabling voters to choose some public officer or officers under the laws of this State or of the United States, or to pass upon any amendment, law or other public act or proposition submitted to vote by law, and *unless otherwise* stated shall also be construed to include primary as well as general and special elections." (Emphasis added).

We believe it is not "otherwise stated" in Section 41, *supra,* that *election* shall refer only to a general election. Sections 41 and 205, both *supra,* are clear and unambiguous and require no extrinsic aids for a proper interpretation of their meaning. We have stated on innumerable occasions that the cardinal rule of statutory interpretation is that the intent of the legislature is to be sought in the first instance in the words of the statute. Where there is no ambiguity or obscurity in the language of the statute, there is usually no need to look elsewhere to ascertain the legislative intent. *Pressman v. Barnes,* 209 Md. 544, 121 A. 2d 816 (1956); *State Tax Commission v. C. & P. Telephone Co.,* 193 Md. 222, 66 A. 2d 477 (1949); *Maguire v. State,* 192 Md. 615, 65 A. 2d 299 (1949); *Saunders v. Maryland Unemployment Compensation Board,* 188 Md. 677, 53 A. 2d 579 (1947); *Celanese Corporation v. Davis,* 186 Md. 463, 47 A. 2d 379 (1946); *Agricultural College v. Atkinson,* 102 Md. 557, 62

A. 1035 (1906). As Mr. Justice Cardozo aptly remarked in *Anderson v. Wilson*, 289 U. S. 20, 27 (1933): "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it."

The Board argues that the statute is ambiguous, not because of the words used by the legislature, but because of a legislative intent which it says clearly manifests a desire not to permit hearings on challenges of registrations before a primary election. Thus, the ambiguity arises, the Board urges, not from the statute itself, but from its legislative history. Perhaps it would be difficult to find a better preface to a discussion of a point such as this than the remark of Mr. Justice Holmes in *Pine Hill Coal Co. v. United States*, 259 U. S. 191 (1922), where he said at p. 196: "It is a delicate business to base speculations about the purposes or construction of a statute upon the vicissitudes of its passage."

Before the passage of the new 1957 Election Law (Acts of 1957, Ch. 739, § 1), the present Sections 41 (a) and 41 (b), *supra,* concerning challenges of registrations of voters, were substantially incorporated in Sections 37 (b) and 37 (c) of Article 33 of the Code of 1951. Section 37 (a) of the old election law, which immediately preceded the "challenge" sections (§§ 37 [b] and [c]) concerned the preparation of an official registration list before every *general* election. Hence, it was obvious that the term "such election" in Section 37 (b), *supra,* referred to the term "general election" in Section 37 (a), *supra,* of Article 33 of the Code of 1951. The Attorney General, for example, adopted this construction of the old election law when he ruled in 1955 that the Board did not have the power to hold hearings with regard to challenges of registrations before a primary election. See 40 *Ops. Atty. Gen.,* 216 (1955).

When the election laws were substantially revised and recodified at the 1957 session of the General Assembly, Section 37 (a), *supra,* was moved back to Section 50 of Article 33 in the Code of 1957, and Sections 37 (b) and 37 (c), both *supra,* became Sections 41 (a) and 41 (b), both *supra,* which are now under consideration. In the new election law, how-

ever, there is no immediate antecedent of the term "such election" appearing in Section 41 (a), *supra*.

The Board contends that the word "such" in Section 41 (a), *supra,* refers to the term "general election" in Section 50, *supra,* but this can hardly be. Generally the word "such" refers only to something which has been said before. See *Mitchell v. Packham,* 103 Md. 693, 63 A. 219 (1906), [word always refers to some antecedent in the context of the instrument, which explains its meaning] ; *Travers v. Wallace,* 93 Md. 507, 49 A. 415 (1901), [word unmistakably relates back to words "heirs" because there is no other antecedent to which it is or can be referable] ; 83 *C. J. S.,* [word refers to some antecedent word or phrase]. And see *In re Wallace's Estate,* 98 Cal. App. 2d 285, 219 P. 2d 910 (1950), where it was said that " '[s]uch' is a relative adjective referring back to and identifying something previously spoken of. It naturally, by grammatical usage, refers to the last precedent antecedent. * * * In this respect it is equivalent to 'said,' 'aforesaid,' 'afore-described' and 'same,' as to all of which the same grammatical rule applies." Thus, the word "such" in Section 41 (a), *supra,* cannot refer prospectively to the term "general election" in Section 50, *supra.* Actually, Section 40 of Article 33 in the Code of 1957 contains the "last precedent antecedent" reference to the word "election," and the specific reference in that section is to "any general, special or primary election." The only other guide to the meaning of "election" as used in this section is found in Section 205, *supra,* which states that "election" shall refer to a primary election as well as general and special elections unless it is otherwise stated.

The Board also argues that the legislature never intended so drastic a change in the election law. However, the 1957 revision of the election law was no mere casual rearrangement of sections. The Wheatley Committee had studied the election laws of this State for over five years, and it would be unreasonable for us to hold that any changes in the law resulting from so detailed a study were inadvertent and not intended. To paraphrase what Mr. Justice Brandeis said with respect to the statute he then had under consideration

in *Iselin v. United States,* 270 U. S. 245 (1926): What the Board seeks is not a construction of Section 41 (a), *supra,* but, in effect, an enlargement of it by the courts, so that what was omitted, presumably by inadvertence, may be included within its scope.

The Board also points out that the report of the Wheatley Committee listed five substantive changes contemplated by the revision of the election laws, and that the report *omitted* any reference to an extension of the right of challenge of registrations by affording an opportunity to challenge registrations before a primary as well as a general election. See *Legislative Council of Maryland, Report to General Assembly of Maryland* (1957), pp. 346-47. This, the Board argues, is indicative of a legislative intent not to afford the right which the petitioners sought and were granted by the trial court. However, it is clear that the committee report was by no means exhaustive of the substantive changes made by the legislature, without further amendment of the recommendations of the committee. For example, the committee report contains no mention of the fact that Section 45 of Article 33 of the Code of 1957 no longer declares that the cancellation of registration by reason of not voting for five years shall not be applicable to Baltimore City as was provided in Acts of 1953, ch. 273, and last codified as Section 40 of Article 33 of the 1956 Supplement to the Code of 1951. There were at least three more substantive changes which were not specifically referred to in the committee report.[1]

That a sweeping revision of the election laws was intended by the General Assembly in 1957 is indicated by a comparison of the titles of the 1945 and 1957 enactments of Article 33 of the Code. The title of Chapter 934 of the Acts of 1945 was:

---

1. The other substantive changes not referred to by the Wheatley Committee include: (i) Section 213 requires a treasurer or political agent to be a *registered voter* as well as a citizen and a resident; (ii) Section 219 limits contributions by a non-candidate to $2,500— a new provision; (iii) Section 233 prescribes a fine of not more than $1,000 for a violation of the Corrupt Practices Act—it was formerly not less than $300 or more than $1,000.

"AN ACT to repeal Article 33 of the Annotated Code of Maryland (1939 Edition), title 'Elections', and all amendments thereof, and to enact a new Article, to be known as Article 33, title 'Elections'."

However, the title of Chapter 739 of the Acts of 1957 was:

"AN ACT to repeal Article 33 of the Annotated Code of Maryland (1951 Edition and 1956 Supplement), title 'Elections', and to enact in lieu thereof a new Article 33, title 'Elections', said new Article to stand in the place and stead of the Article so repealed, generally revising and recodifying the election laws of this State; to repeal all laws inconsistent with this Act; to state the effect of certain other legislation and of certain pending legal proceedings; and relating generally to the election laws of this State and to elections conducted thereunder."

It is also significant to note that the "housekeeping" amendments correcting errors in the 1957 Revised Election Law, set forth in Chapter 38 of the Acts of 1958, do not attempt to correct or even refer to the alleged ambiguity in Section 41 (a), *supra*.

Although we have, to some extent, indulged in an analysis of the legislative intent, we believe that this case is essentially controlled by the fact that the statute under consideration is clear and free from doubt. The danger of a "free-wheeling" interpretation of a clear and unambiguous statute is that it permits a court to read into the law its own predilections and so play havoc with consistency and certainty. If the legislature intended otherwise than what we here hold, it will have an opportunity to provide to the contrary at its next or a subsequent session before another primary or special election shall ensue.

HAMMOND and PRESCOTT, JJ., dissent.