ARMCO STEEL CORPORATION *v.* STATE TAX COMMISSION OF MARYLAND ET AL.

[No. 53, September Term, 1959.]

*Decided November 24, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John Henry Lewin* and *Robert M. Thomas,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellant.

*John Martin Jones, Jr., Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the State Tax Commission of Maryland, one of the appellees.

*Bernard J. Sachs, Assistant City Solicitor of Baltimore,* with whom were *Harrison L. Winter, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor,* and *Morton L. Goldner, Assistant City Solicitor,* on the brief, for the Mayor and City Council of Baltimore, the other appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the Armco Steel Corporation (Armco) from a final order of the Circuit Court of Baltimore City affirming a decision by the State Tax Commission which denied to Armco an exemption from a Baltimore City tax on certain raw materials which it used in its business for the year 1957. The exemption permitted by the City is limited to "ores and unrefined metals shipped into the City for processing or refining purposes, and metals derived therefrom in the hands of the refiner * * *." The lower court held that Armco is not a refiner under the exemption and that the exemption applies only to ores and unrefined metals owned by a non-resident and shipped into the city for refining or processing purposes and to the metals derived therefrom in the hands of the refiner.

Armco contends that the process which it carries on in the city is a refining process and that there is no basis for limiting the exemption to those ores and unrefined metals owned by non-residents. The appellees, the State Tax Commission and the Mayor and City Council of Baltimore (the City) argue that Armco is a manufacturer of stainless steel and not a refiner, that most of Armco's raw materials are not ores and unrefined metals in the popular sense and thus not covered by the exemption, and that the exemption applies only

to those ores and unrefined metals owned by non-residents and the metals derived therefrom in the hands of the refiner.

The tax involved in this case resulted from the repeal, with certain exceptions, of the Baltimore City Manufacturers' exemptions. The Manufacturers' Exemption is set out in Art. 37, Sec. 50 of the Baltimore City Code (1950 Ed.) and Ch. 82, Sec. 10 of the Laws of Maryland of 1918. (The latter concerns property annexed to the City in 1918). Both provisions exempt from taxation all personal property used entirely or chiefly in manufacturing, including raw material on hand and manufactured products in the hands of the manufacturers. By Sections 1 and 2 of Ordinance 643, approved December 5, 1956, the City repealed Art. 37, Sec. 50 of the City Code and repealed and reenacted Ch. 82, Sec. 10 of the Laws of Maryland of 1918, leaving out the exemption proviso. Sections 3 and 4 of that Ordinance went on to provide:

"SEC. 3. *And be it further ordained,* That the exemption from taxation for all ordinary municipal purposes of all personal property of every description, with certain exceptions, owned by any person, firm or corporation and used entirely or chiefly in connection with manufacturing in Baltimore City, including mechanical tools or implements, whether worked by hand or steam or other motive power, machinery, manufacturing apparatus or engines, raw material on hand, manufactured products in the hands of the manufacturer, bills receivable and business credits of every kind, due to the manufacturer, or goods manufactured in Baltimore City, is hereby revoked and declared null and void.

"SEC. 4. *And be it further ordained,* That beginning with the assessment and levying of taxes for the use of the Mayor and City Council of Baltimore for the year 1957 and thereafter, the assessed or assessable value of all personal property of every description used entirely or chiefly in connection with manufacturing in Baltimore City, including machinery and equipment used in the pasteurization

and processing of milk, laundry machinery when employed or used in the business of laundering, mechanical tools or implements, whether worked by hand or steam or other motive power, machinery, manufacturing apparatus or engines, raw material on hand, manufactured products in the hands of the manufacturers, shall be taxed for all ordinary municipal purposes in the same manner and to the same extent as other personal property in Baltimore City is or hereafter may be taxed for all ordinary municipal purposes. Provided, however, that $15,000.00 of the assessed or assessable value of all personal property of every description used entirely or chiefly in connection with manufacturing in Baltimore City by any one particular person, partnership, corporation or other legal entity, including the machinery, equipment, tools, apparatus, engines, raw material on hand and manufactured products in the hands of the manufacturer, hereinabove mentioned, shall not be subject to such assessment and levying of taxes but shall be exempt from assessment and taxation for all ordinary municipal purposes. And provided, further, that ores and unrefined metals shipped into the City for processing or refining purposes, and metals derived therefrom in the hands of the refiner, shall not be subject to such assessment and levying of taxes, but shall be exempt from assessment and taxation for all ordinary municipal purposes."

The validity of Ordinance 643 was upheld in *Kimball-Tyler Co. v. Baltimore City,* 214 Md. 86, 133 A. 2d 433. (The City later reversed this policy and reenacted Sec. 50 of Art. 37 of the City Code, the exemption to be reinstated in installments over a period of years.)

Armco was assessed a total of $14,333,010 by the State Tax Commission on its manufactured products and raw materials for the year 1957. Armco claims that $13,282,386 of this assessment is illegal because $3,458,661 of the assessment is on ores and unrefined metals shipped into the City for process-

ing or refining purposes and $9,823,725 of the assessment is on metals, in the hands of Armco as the refiner, derived from the above ores and unrefined metals. Armco appealed the assessment to the Circuit Court of Baltimore City. At this stage the City was permitted to intervene as an appellee. The Circuit Court upheld the assessment of the Commission and this appeal followed.

Armco is an Ohio corporation which has plants located in various parts of the United States. Its principal business is manufacturing steel. It has a plant located in Baltimore which is devoted exclusively to the manufacture of 74 grades of stainless steel. The stainless steel is produced in various sizes and shapes, but Armco does no fabricating and does not sell to consumers. Armco ships part of the steel to its own plants elsewhere in the country, and sells the rest to fabricators and distributors. To produce this steel Armco imports into the city raw materials classified as scrap metal, ores, and unrefined ferro alloys. All of these imports are owned by Armco; it does not perform a refining service for others.

Armco produces stainless steel under a process covered by several patents. These patents cover the method of coating the furnaces in which the stainless steel is produced and for adding the desired chromium, ferro alloys and other metals to the heated stainless steel scrap. The process includes three separate stages. (The City calls the addition of ferro alloys between the second and third stages a separate stage and thus says the process contains four stages. The disagreement is merely one of description, not of substance.) The process includes an initial melting down stage, the melt down oxidation stage, in which the principal raw materials such as chrome ore, iron ore, high ferrochrome metal and stainless steel scrap in various proportions are melted down in an electric arc furnace at an extreme heat, forming a bath or pool of molten metal. In addition to melting down the basic ingredients this heating also reduces the carbon content of the raw materials, the excess carbon passing off in the form of carbon dioxide gas. A certain amount of slag is also produced by this heating. In the next stage, the reduction stage, iron oxide and chromium oxide present in the slag are reduced in order to

recover the metallic values in the form of iron and chromium which are in the slag. The reduction is accomplished by the addition of ferrochrome, ferrosilicon and lime. At the end of this stage the slag is drawn off the top of the molten metal. Then certain ferro alloys are added to the remaining molten metal prior to or at the beginning of the finishing stage. At this point a finishing slag of chromium fluorspar and high grade silicon is put on top of the bath, the new slag being allowed to work on the heated metal for a period of time to allow the remaining undesirable impurities to be removed from the bath. Small amounts of other metals may be added at this stage to give the steel certain desired qualities. The product of this process is stainless steel.

The appellants maintain this process is a refining process, the appellees argue that because of the addition of foreign matter the end product is an alloy and thus is the result of a manufacturing process and not a refining process. The lower court found that when the Mayor and City Council used the words "processing", "refining" and "refiner" in the exemption, they used them "in their usual and ordinary meaning, namely, 'the reduction to a fine, unmixed or pure state.'" Following this definition the court held that Armco did not qualify as a refiner or processor under the Ordinance. It stated that any manufacturer processes or refines the raw materials employed in the manufacturing of its products, but that to construe the exemption to cover a process like that of Armco, which combines and mixes materials to produce an alloy, would frustrate rather than effectuate the legislative intent.

The usual rule in tax exemption cases is that the exemption is to be strictly construed, but it should not be so strictly construed as to defeat the intent of the enacting body. *Suburban Propane Gas Corp. v. Tawes,* 205 Md. 83, 106 A. 2d 119; *John McShain, Inc. v. Comptroller,* 202 Md. 68, 95 A. 2d 473; *Shaughnessy v. Linguistic Society of America,* 198 Md. 446, 84 A. 2d 68; *Clarke v. Union Trust Co. of D. C.,* 192 Md. 127, 63 A. 2d 635. However, "strict construction does not require that an unreasonable or unusual meaning must be given to the words used in exemption statutes."

*State Tax Commission v. Whitehall Foundation, Inc.,* 214 Md. 316, 320, 135 A. 2d 298. The problem here is to discover the usual meaning of the words "processing" and "refining" and then to determine whether the operations of Armco qualify it to be included within the exemption. The lower court adopted the definition of refining advanced by the appellees, *i.e.,* "the reduction to a fine, unmixed or pure state." This definition is the first one given in Webster's New International Dictionary (Merriam-Webster, Unabridged 2d Ed., 1957). The court apparently thought that this definition, by its being placed first in a list of definitions, was the usual and ordinary meaning of the word and thus that definition which the Mayor and City Council had in mind when the Ordinance was adopted. The appellees argue that because this definition is that listed first in Webster, it is the fundamental definition which expresses the usual and ordinary meaning of the word. The error in this reasoning is that it attempts to place the use of the word "refine" in a vacuum without regard to the subject to which the Ordinance is directed. The exemption was directed at refiners and processors of ores and other unrefined metals. In construing the language of a statute, the court must consider not only the literal or usual meaning of words, but their meaning and effect considered in the light of the nature of the subject matter and the purposes to be accomplished. *Hitchins v. City of Cumberland,* 215 Md. 315, 138 A. 2d 359; *Tyrie v. Baltimore County,* 215 Md. 135, 137 A. 2d 156; *Scherr v. Braun,* 211 Md. 553, 128 A. 2d 388; *Bond v. Baltimore City,* 118 Md. 159, 84 A. 258. This rule applies to exemption enactments as well as to other laws. *State Tax Commission v. Whitehall Foundation, Inc., supra.* When terms in a statute are used relating to trade or commerce, absent legislative intent to the contrary, the terms are presumed to be used in their trade or commercial meaning. 2 Sutherland, *Statutory Construction,* § 4919 (3rd Ed., 1943). In the instant case the City was attempting to exempt from taxation those firms which process or refine ores and unrefined metals. Thus the meaning of refining must be in reference to that industry which refines metals, and the term takes its meaning from the way it is used in the metal refining

industry. While the legislative body cannot be presumed to know all the technicalities of the metal refining business, it must be presumed that it possessed at least the common knowledge about that industry. We cannot, as appellees would have us do, hold that common knowledge stops with the first definition in Webster. Thus the definition of "refine" in Webster which is most relevant to this case is No. 5. " *Iron Mfg.* To treat (pig iron) in the refinery furnace so as to remove the silicon." The Oxford English Dictionary (1933) gives as the first definition of "refine"—"To purify or separate (metals) from dross, alloy, or other extraneous matter; in iron-working, to convert grey pig iron into white or plate metal by *partial* decarburization." (Emphasis added.) A more complete description of the process of making iron and steel by the heating and the refining process can be found in 12 *Encyclopedia Britannica, Iron and Steel* (1945 Ed.). Also relevant is 15 *Encyclopedia Britannica, Metallurgy* (1945 Ed.). We are of the opinion that a reference to these authorities makes it clear that it is not the common and usual meaning of "refine" to require the reduction to a pure state but rather that in the metal industry "refine" means the removal of at least part of the undesirable matter in the ore or metal. In the refining of steel and other metals it is virtually impossible to remove all the impurities from the metal. The object of the refining process is to reduce the impurities to a level where the refiner can produce the purity of metal which suits its commercial requirements.

The appellees also argue, however, that Armco is not a refiner because the Armco process provides for the refining of stainless steel scrap, stainless steel being basically a combination of iron and chromium, to obtain the desired combination of these two metals to which are added other metals in small amounts to produce the particular grades of stainless steel. The argument of the appellees, which was accepted by the lower court, is that Armco is in the business of making stainless steel and not in the refining business, and thus does not qualify for the exemption. This argument would seem to be based on the reasoning that because Armco mixes metals which it refines and seeks a combination of pure metals rather

than one pure metal, Armco is no longer a refiner but rather a manufacturer of steel. This reasoning, it seems to us, is based upon the adoption of the definition of refining advanced by the appellees, *i.e.*, to reduce to a fine, unmixed, or pure state, and reading into this definition a requirement that a refiner processes only one metal at one time. Applying this requirement to the facts before us, it would be necessary to refine the iron and chromium (and sometimes nickel) in separate processes before Armco could qualify as a refiner. A further qualification is that the refiner could only refine, and a later mixing of the refined metals in the same factory would render the company something more than a refiner and thus not eligible for the exemption. We do not find this argument persuasive. We believe that the Armco process of taking scrap stainless steel and refining it to make it commercially usable falls within the usual concept of the meaning of refining. The fact that basically two or three metals are refined together (with minute additions of other metals) does not change the essential nature and purpose of the process. The agents added to the molten metal also do not change the process any more than poling of the copper sulphate solution used in copper refining makes that process anything other than a refining process. See 15 *Encyclopedia Britannica, Metallurgy* (1945 Ed.).

It is not necessary, however, to find that Armco is a refiner either in a strict sense as urged by the appellee or in a broader sense as set out above, because the Ordinance is not so limited. The Ordinance exempts ores and unrefined metals shipped into the city for "processing or refining purposes." The court below defined processing the same way as it defined refining. The appellees argue that the word "process" should mean the same thing as "refine" for two reasons: first, because process is used in conjunction with the word "refine", and second, because the Ordinance in exempting "the metals derived therefrom" limits this to metals in the hands of refiners. Appellees argue that we must follow the rule of statutory construction, that words used together take their meaning from each other. More specifically, this rule says that where two or more words are grouped together, and ordi-

narily have a similar meaning but are not equally comprehensive, the general word is limited and qualified by the special word. 2 Sutherland, *Statutory Construction,* § 4908 (3rd Ed., 1943). See also *Chayt v. Board of Zoning Appeals,* 177 Md. 426, 9 A. 2d 747. Appellees contend that the use of the word "refining" after the word "processing" necessitates the conclusion that "processing" was used merely as a synonym for "refining". Appellees' argument goes beyond the reasonable meaning of the above rule and is contrary to another rule of statutory construction, that before words can be regarded as surplusage it must be clear that the enacting body could not possibly have intended the words to be in the legislation. *Pressman v. State Tax Commission,* 204 Md. 78, 102 A. 2d 821. Applying these rules to the word "processing" it seems clear that "processing" is a general word limited by the particular term which follows it—"refining". However, so that "processing" is not rendered surplusage by making it mean the same as "refining" and because it is a more general term than the latter, it must mean something more than does "refining". Reading this section of the Ordinance narrowly, as an exemption statute, and at the same time giving effect to every word, it thus appears that while the Ordinance was intended to exempt only those processors engaged in a refining operation as to metal it was also intended to include those who not only refined metals but also subjected them to a process that would not be considered part of the refining. The conclusion is not rendered incorrect by the fact that the exemption of "metals derived therefrom" is limited to metals in the hands of refiners because the term "refiner" here has reference to those who performed a refining operation on the ores and unrefined metals mentioned in the previous clause, without excluding those who performed some additional processing on these same ores and unrefined metals.

The appellees further argue that the stainless steel scrap which Armco processes is not, in the usual sense of the term, unrefined metal. They concede that under a technical definition the scrap would be considered unrefined metal but maintain that such definitions would not be within the knowledge of the Mayor and City Council. However, as we have pointed out

above, the acknowledged meaning of "refine", when used in connection with the metal industry, is to remove so much of the impurities as to produce the quality of metal desired by the refiner. Whether for another the metal would already be sufficiently refined, or whether the metal was once refined to the purity now sought but which no longer exists because of contamination, is immaterial in determining the nature of the process to which the metal is now subjected. For Armco's purposes the metal is unrefined and must undergo a refining process. It must be concluded, then, that the scrap is an unrefined metal under the terms of the Ordinance.

Appellees' last argument is that the Ordinance is limited to refining companies which refine ores and unrefined metals for non-residents. This argument was adopted by the lower court and by the State Tax Commission in its opinion in *American Smelting and Refining Co.,* reported in The Daily Record, May 13, 1958. It finds no support in the language of the Ordinance.

There is in the record testimony by the Secretary of the State Tax Commission and the City Budget Director as to the legislative history of the Ordinance. This testimony was received over objection by Armco and apparently no ruling was ever made on the objections. It seems to have been considered, but in discussing this evidence we are not to be understood as approving its admission. In general, this testimony was to the effect that this exemption was put into the Ordinance at the instance and for the benefit of one—and supposedly only one—company. That company had a refining plant in Baltimore and the great bulk of its business consisted of further refining already partly refined metals owned by others. The argument was made that the purpose of the exemption was to prevent the diversion elsewhere of readily transferable business on account of the removal of the tax exemption, but that no such consideration applied to a refiner engaged in refining raw materials which it owned. Such a refiner-owner, it was supposed, would still be under the economic necessity of continuing to use its plant in Baltimore, notwithstanding the removal of the tax exemption.

We need not consider whether this frankly extremely prac-

46

tical application of the art of taxation involved such a discrimination as to render it subject to successful constitutional objection, for the Ordinance contains no language upon which such a discrimination can be based. Where the language of a statute or ordinance is clear and unambiguous resort may not be had to extraneous considerations for its construction. *County Treasurer v. State Tax Comm.,* 219 Md. 652, 150 A. 2d 452; *Board of Supervisors of Elections of Balto. v. Weiss,* 217 Md. 133, 141 A. 2d 734; *Bouse v. Hutzler,* 180 Md. 682, 26 A. 2d 767. That is the situation here. The exception says nothing about limiting the exception to ores or unrefined metals "owned by others." Such a clause cannot be read into it.

For the above reasons we think that the appellant is entitled to the exemption on its ores, ferro alloys, pig iron and scrap shipped into the city for refining or processing purposes and on refined metals derived therefrom while in its hands, and thus the order of the lower court must be reversed and the case remanded for the entry of an order in accordance with this opinion.

> *Order reversed and case remanded for the entry of an order in accordance with this opinion; the costs to be paid by the appellees.*