MARYLAND NATIONAL BANK, Successor Trustee
u/w of Leslie A. Smelser *v.* COMPTROLLER
OF THE TREASURY OF THE STATE
OF MARYLAND

[No. 221, September Term, 1971.]

*Decided February 17, 1972.*

The cause was argued on January 13, 1972, before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ., and reargued on January 18, 1972, before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Argued and reargued by *William A. Grimes,* with whom were *Ober, Grimes & Shriver* on the brief, for appellant.

Argued and reargued by *Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court. BARNES, McWILLIAMS and DIGGES, JJ., dissent and BARNES, J., filed a dissenting opinion in which McWILLIAMS and DIGGES, JJ., concur at page 543 *infra.*

Once again, we are called upon to construe the revision of Maryland's income tax law, enacted by Ch. 142 of the Laws of 1967, Maryland Code (1957, 1969 Repl. Vol.) Art. 81, §§ 279-323A, which substantially changed the

prior law and became effective 1 July 1967 but was intended to reach income received after 31 December 1966. In *Katzenberg v. Comptroller*, 263 Md. 189, 282 A. 2d 465 (1971), we concluded that the income tax law was not impermissibly retroactive when it taxed capital gains, recognized subsequent to the effective date of the law, although generated by agreements for an installment sale of capital assets entered into prior to the effective date. Here, the question is whether the accumulated and undistributed net income of a trust estate, resulting from a gain on the sale of capital assets, and held for the benefit of contingent and therefore unascertained beneficiaries, is taxable to the trustee under Art. 81, § 313.

The factual background of the controversy is refreshingly simple. Leslie A. Smelser died domiciled in Carroll County, Maryland, in 1944. By the terms of his will, he left the residue of his estate to The Fidelity Trust Company, now Maryland National Bank (the Trustee) as trustee, to pay the income to Mrs. Smelser for life, then to his son, Herbert, if living at the death of Mrs. Smelser, until Herbert reached 35 years of age, subject, however, to the provision that Herbert was to receive one-half of the principal upon attaining the age of 30 years. In the event of Herbert's death before the termination of the trust, Herbert's share was to be distributed to his descendants. If Herbert left no descendants, one-third of Herbert's share was to be distributed to Herbert's wife, and the balance of Herbert's share, or all of Herbert's share, if Herbert left no wife surviving, was to be held in trust for the benefit of Cora C. Stouffer, Mr. Smelser's sister, for life. On the death of the sister, or on Mrs. Smelser's death, she having survived the sister, the principal of the trust estate was to be distributed among those persons who would have been entitled thereto had Mr. Smelser survived his sister and his wife and died intestate.

Herbert predeceased his father and died leaving neither a wife nor any surviving descendant. Mr. Smelser's sister died in 1948. As a consequence, the ultimate takers

are Mr. Smelser's next of kin, whose identity cannot be ascertained until the death of Mrs. Smelser.

In the calendar year 1967, the Trustee recognized a gain from the sale of capital assets in the amount of $1,173.66, which was added to the principal of the trust. If the gain is taxable, the Maryland income tax attributable thereto is $11.71. The Trustee disclosed the gain on its 1967 Maryland Fiduciary Return, but paid no tax, on the theory that the undistributed income was being held for the benefit of nonresidents of Maryland.

The Comptroller disagreed with the Trustee's interpretation, and assessed a tax of $11.71, which, on appeal to the Maryland Tax Court, was affirmed.[1] The Trustee then appealed to the Baltimore City Court, which affirmed the tax court. From the judgment entered in favor of the Comptroller, this appeal was taken.

The Trustee pins its hopes on Art. 81, § 313(b), which provides:

> "A fiduciary shall be liable for income tax only with respect to such portion of the income of the fiduciary estate as is accumulated and not paid, distributed, or credited to or for the benefit of a beneficiary thereof which undistributed income shall not, however, include any portion thereof which pursuant to the terms of a created trust or estate is required to be permanently set aside for a religious, educational or charitable organization or purpose, and provided further, that *a fiduciary shall not be liable for any tax on income from intangible personal property held in this State, in trust, to pay the income for the time being to, or to accumulate or apply such income for the benefit of any nonresident of this State,* or any corporation not doing business in this State. In computing the tax of a fiduciary the income and allowable deductions, respectively, of the fiduciary shall be that proportion

---

1. The parties concede that this is a test case.

of the income and allowable deductions, respectively, of the fiduciary estate for the taxable year, that the part of the net income of the fiduciary estate which is accumulated in such year, bears to the total net income of the fiduciary estate for such year." (Emphasis supplied)

As a consequence, all income accumulated by a fiduciary is taxable unless it is accumulated for the benefit of a charity, a nonresident individual or a corporation not doing business in Maryland. The Trustee reads § 313 (b) in conjunction with the definition of the word "resident" which appears in Art. 81, § 279 (i) :

" 'Resident' means an *individual* domiciled in this State on the last day of the taxable year, and every other individual who, for more than six months of the taxable year, maintained a place of abode within this State, whether domiciled in this State or not; but any individual who, on or before the last day of the taxable year, changes his place of abode to a place without this State, with the bona fide intention of continuing to abide permanently without this State, shall be taxable as a resident of this State for that portion of the taxable year in which he resided in this State and as a nonresident of the State for the remainder of the taxable year. The fact that a person who has changed his place of abode, within six months from so doing, again resides within this State, shall be prima facie evidence that he did not intend to have his place of abode permanently without this State. *Every individual other than a resident shall be deemed a nonresident.*\* \* \*" (Emphasis supplied) [2]

2. It was suggested at argument that the treatment accorded nonresidents was intended to insure that Maryland fiduciaries could remain competitive with fiduciaries in other states.

The definition of "resident" appearing in § 279(i) should be read in the light of the definition of "individual" in § 279(e):

> " 'individual' means all natural persons, whether married or unmarried; * * *."

The principles of statutory construction here involved are too familiar to require more than a brief reference. If there is no ambiguity or obscurity in the words used in the statute, there is no need to look elsewhere to ascertain the intent of the legislature, *Maryland Medical Service v. Carver,* 238 Md. 466, 477-78, 209 A. 2d 582 (1965); *Board of Supervisors of Elections v. Weiss,* 217 Md. 133, 136, 141 A. 2d 734 (1958). If the legislative intent is expressed in clear and unambiguous language, this will be given effect by the Court, *Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A. 2d 619 (1946).

The State argues that the favorable treatment accorded nonresidents by § 313(b) is an exemption, which is to be strictly construed against the taxpayer, *Armco Steel Corp. v. State Tax Commission,* 221 Md. 33, 40, 155 A. 2d 678 (1959). The Trustee, on the other hand, argues that nonresidents are the subject of an exclusion, which, when of doubtful scope, should be construed most strongly in favor of the taxpayer and against the State, citing *Baltimore Foundry v. Comptroller,* 211 Md. 316, 319, 127 A. 2d 368 (1956); *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 234, 107 A. 2d 93 (1954).

As we see it, it matters little whether nonresidents are exempted or excluded. "[A] contingent remainder is one which is either limited to a person not in being or not certain or ascertained, or so limited to a certain person that his right to the estate depends upon some contingent event in the future," *Safe Dep. & Tr. Co. v. Bouse,* 181 Md. 351, 356, 29 A. 2d 906 (1943). The simple fact is that a contingent remainderman, who may be either a person not in being or not ascertained, *Chism v. Reese* 190 Md. 311, 321, 58 A. 2d 643 (1948) and who may not be a "natural person" at all, is neither a resident nor a

nonresident, since both terms import identifiable individuals. A remainderman who is unascertainable, and therefore unidentifiable, is concealed by a cloak of anonymity which will not be lifted until the termination of the preceding estate, when the interest vests in interest or possession and for the first time a determination can be made that the remainder has vested in a resident, or a nonresident, or in a class, some of whom may be residents and some of whom may not be, or even has vested in a corporation.

A helpful analogy can be drawn from the treatment accorded contingent remaindermen when interests less than absolute and succeeding remainder interests, whether vested or contingent, are valued for inheritance tax purposes under Code Art. 81, § 160 and § 161. In an instance where there is a vested remainder subject to divestiture, and a contingent remainder, and one interest is subject to the $7\frac{1}{2}\%$ collateral inheritance tax, and another to the $1\%$ direct inheritance tax, and the identity of the ultimate taker is not ascertainable, 34 Op. Att'y Gen. 259 (1949) ruled that if the tax were to be prepaid it would have to be paid at the higher rate on the entire value of the remainder interests. *Safe Dep. & Tr. Co. v. Bouse, supra,* 181 Md. at 361, recognizes that in such an instance, "[a] contingent remainderman has the right to pay a tax on something which he may possibly never receive."

It seems clear to us that under the circumstances of this case, undistributed capital gains are subject to income tax under § 313(b), regardless of whether § 313(b) is read as an exclusion or an exemption. To hold otherwise would be to encompass unascertainable and therefore unidentifiable takers within the statutory concept that nonresidents are individuals not meeting the Act's definition of residents. We find no ambiguity or obscurity in the language of the statute: whatever ambiguity can be conjured up is the creature of the construction urged on us by the appellant, which would require us to add a provision enlarging the scope of the exemption or ex-

clusion, which the legislature did not see fit to include. This is something quite different from construing a statute liberally in favor of a taxpayer, *Amalgamated Ins. v. Helms*, 239 Md. 529, 534, 212 A. 2d 311 (1965), and something we cannot do.

> *Judgment affirmed, costs to be paid by appellant.*

BARNES, J. dissenting:

I dissent because (1) the majority fails to give effect to the clear and unambiguous language of the applicable statute that the corporate trustee is accumulating undistributed net income or capital gains for nonresidents of the State as defined in the statute and (2) if the applicable statutory language is thought to be ambiguous, (a) has failed to construe the statutory language in favor of the taxpayer, the applicable language being a limitation of the scope of the statute rather than an exemption; (b) has, in effect, performed a forbidden legislative function by adding a third classification in the statutory scheme not provided for by the General Assembly; and (c), in so doing, may have frustrated one of the envisioned principal purposes of the exclusion from scope, *i.e.*, to make Maryland corporate fiduciaries competitive with corporate fiduciaries outside of Maryland.

### 1.

In ascertaining the legislative intent in statutory enactments, the Courts first consider the words used and if there is no ambiguity or obscurity in the language, there is usually no need to look elsewhere to ascertain the legislative intent. *Maryland Medical Service, Inc. v. Carver*, 238 Md. 466, 478, 209 A. 2d 582, 588 (1965). We are to consider the statute as a whole; and we will, if possible, harmonize all parts of a statute and make them all, as nearly as possible, consistent with the general scope and purposes of the legislation. *State Department of Assessments and Taxation v. Ellicott-Brandt, Inc.*, 237 Md. 328,

335, 206 A. 2d 131, 135 (1965). Applying these rules, the applicable statutory language, taking the statute as a whole, is clear and unambiguous. The amendment of § 313(b), by the Laws of 1967, Ch. 142, clearly added *an additional limitation on the scope* of that section in regard to the liability of a fiduciary for income tax *only* upon the portion of income accumulated and not paid out by the fiduciary, *i.e.,* that such a fiduciary should not be liable for any tax "on income from intangible personal property held in this State, in trust, to pay the income for the time being to, or *to accumulate* or apply such income for the benefit of any non-resident of this State, or any corporation not doing business in this State." (Emphasis supplied.) The other limitation in scope, prior to the amendment of 1967, had to do with accumulations for "a religious, educational or charitable organization or purpose."

The question of "residence" or of "nonresidence" is of critical importance in the Maryland income tax law inasmuch as this Court has indicated that one of the principal considerations for the imposition of this tax is "for the privilege and opportunities of residence in Maryland, and not upon the source that generates or pays the income, which is the measure of the tax." *Fax v. State Tax Commission,* 212 Md. 296, 299, 129 A. 2d 167, 168 (1957).

The critical question is who is a "nonresident of the State." The General Assembly did not leave this in doubt. By § 279(i) of Art. 81, entitled "Definitions," it defines "Resident" as an individual domiciled in Maryland on the last day of the taxable year and every other individual who maintained a place of abode within Maryland for six months of the taxable year, with a provision for apportionment of taxes in the event of a bona fide change of abode. It is then provided that *"Every* individual other than a resident *shall be deemed a nonresident. . . ."* (Emphasis supplied.) In short, there are two classifications in regard to residence in the State for income tax purposes (1) a resident as defined and (2) nonresidents who are those other than residents as defined. There is

no *third* classification. If, therefore, a person cannot be included in the definition of "Resident," he or she is, *ipso facto,* by the statutory definition, a "nonresident." This statutory provision has the virtue of simplicity and is entirely clear.

It is conceded that the contingent beneficiaries in the present case are not "Residents" as defined in § 279(i). This being the case, it inevitably follows that they are "nonresidents" by virtue of the definition. This is what the language states and this manifests the clear legislative intent. This Court need look no further. If the General Assembly wishes to change the effect of the present language, it sits annually and may readily do this. It is, however, not the function of this Court to make such a change. *Maryland Medical Service, Inc. v. Carver, supra* (238 Md. 466, 478, 209 A. 2d 582, 588 (1965)).

The majority, however, while agreeing that if the statutory language is clear and unambiguous, such language is deemed to express the legislative intent, states that the provision in § 313(b) creating the classification of nonresident should be read in connection with the definition of "Individual" in § 279(e), but only part of that definition is quoted. The word "Individual" not only includes "natural persons" but also "corporate fiduciaries and the estates they represent." The full definition is as follows:

> "(e) *'Individual'* means all natural persons, whether married or unmarried; and also all fiduciaries, including corporate fiduciaries and the estates they represent."

It is, therefore, apparent that the definition of "Individual" is not confined to natural persons but also includes legal persons and the estates of corporate fiduciaries. In short, the definition of "Individual," although properly to be considered, does not, as I see it, help the majority in construing the definition of "Resident" in § 279(i). The facts in the present case show that the contingent remaindermen are those who would inherit under

the laws of Maryland if the testator had died intestate. These contingent remaindermen must of necessity be "natural persons"—either married or unmarried. The fact that the *specific* natural persons who will ultimately take cannot be immediately ascertained, does not destroy their status as "natural persons." Apart from this obvious conclusion, the definition of "Individual" includes "corporate fiduciaries" such as the appellant in this case. Indeed, the definition of "Individual" appears to me to strengthen a holding that the corporate fiduciary appellant and the contingent remaindermen are all within the second classification of "nonresidents" and that the accumulations in question are not taxable to the corporate fiduciary. To me the applicable language is clear and unambiguous in this regard and requires this construction.

## 2.

Even if the language should be thought to be ambiguous—which in my opinion it is not—nevertheless the final result would be the same if the usual maxims of construction of ambiguous statutory language were applied.

## (a)

As already stated, the statutory provision added by the 1967 amendment to § 313 was a limitation upon the *scope* of § 313 and not an *exemption* from taxation. This is an important distinction in that, if the provision is a limitation upon the scope of the imposition of the tax, it is to be construed in favor of the taxpayer. As Judge Delaplaine, for the Court, stated in *Comptroller of the Treasury v. M. E. Rockhill, Inc.*, 205 Md. 226, 234, 107 A. 2d 93, 98 (1954):

> "In interpreting a tax statute, the court must not extend its provisions by implication beyond the clear import of the language employed. Such a statute, in case of doubt as to its scope, should be construed most strongly in favor of the citizens and against the state. *Gould v. Gould*, 245

U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; *Magruder v. Hospelhorn*, 173 Md. 62, 72, 194 A. 839; *Maryland Unemployment Compensation Board v. Albrecht*, 183 Md. 87, 92, 36 A. 2d 666."

This Court cited *Rockhill* with approval and applied its holding in *Fair Lanes, Inc. v. Comptroller of the Treasury*, 239 Md. 157, 162, 210 A. 2d 821, 823 (1965).

If, however, the statutory provision creates an *exemption* from the tax, such an exemption is strictly construed in favor of the State and against the taxpayer. *The Macke Co. v. State Department of Assessments and Taxation*, 264 Md. 121, 285 A. 2d 593 (1972).

It is clear to me that the provisions of § 313(b) impose the liability of a fiduciary for income tax within certain limitations expressed in the statutory language. It states that the fiduciary "shall be liable for income tax *only* with respect to such portion of the income of the fiduciary estate as is accumulated," etc. (Emphasis supplied.), but which undistributed income shall not *include* portions set aside for religious, educational and charitable purposes and states further that such liability does not exist in regard to the accumulations for the benefit of a nonresident of Maryland. These provisions—all of them—have to do with the *liability* for the income tax and are addressed to the *scope* of the application of the tax and are not exemptions such as are found, for example, in § 9 of Art. 81 under the heading "Exemptions." These are true *exemptions* from taxation and are to be "strictly construed" as provided by the express language of § 9 as well as by the Maryland case law.

In *Rockhill, supra* (205 Md. 226, 107 A. 2d 93 (1954)), this Court held that under then Art. 81, § 320(f)(5), which provided, "The sale or charges for any room or rooms, lodgings or accommodations furnished by any hotel, inn, tourist camp, tourist cabin or any other place in which rooms, lodgings or accommodations *are regularly furnished to the public for a consideration,*" and made such charges subject to the Retail Sales Tax, the

limitation of regular furnishing to the public was a limitation upon the *scope* of the tax and was to be most strongly construed in favor of the citizen and against the State. In the present case, the two limitations mentioned were addressed to the *scope of the liability* for the income tax and were not "exemptions" at all. Even apart from express statutory language requiring a strict construction in favor of the State for exemptions from taxation, the rationale of the case law to the same effect is that it is to be presumed that the State does not intend to surrender its taxing power unless such intention is clearly and unequivocally stated in the statute. In the instant case, the State is not *surrendering* its taxing power, but is *exercising* it subject to certain limitations in scope.

A strict construction of the language in question will most certainly indicate that the trustee accumulates for nonresidents of Maryland as defined in the statute.

### (b)

Fortunately, in Maryland we have a firm and unambiguous constitutional requirement in regard to separation of the powers of the State government. Article 8 of the Declaration of Rights of the Maryland Constitution provides:

> "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and *no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.*"
> (Emphasis supplied.)

Our predecessors have firmly adhered to this requirement of strict separation of powers and indeed have not hesitated to hold unconstitutional various attempts to impose nonjudicial duties upon the Courts of this State. See *Close v. Southern Maryland Agricultural Ass'n*, 134 Md. 629, 108 A. 209 (1919) and prior Maryland cases cited therein. This Court has been equally firm in holding

that it is not the function of the Court to exercise the legislative powers of the General Assembly by supplying statutory omissions, be they ever so unintentional or inadvertent, *Rogan v. Baltimore & Ohio R. R. Co.*, 188 Md. 44, 54, 52 A. 2d 261, 266 (1947) and see *Dundalk Liquor Co. v. Tawes*, 197 Md. 446, 454, 79 A. 2d 525, 529 (1951), citing *Rogan* with approval; or by inserting words into a statute, *Roach v. Jurchak*, 182 Md. 646, 652, 35 A. 2d 817, 820-21 (1944); or by deleting language from a statute, *Bosley v. Dorsey*, 191 Md. 229, 237, 60 A. 2d 691, 694 (1948).

It is not the function of this Court to determine the public policy of a statute other than that expressed in the statute itself. As Judge Delaplaine aptly stated, for the Court, in *Schmeizl v. Schmeizl*, 186 Md. 371, 376, 46 A. 2d 619, 621 (1946):

> "The court cannot adopt a public policy contrary to the plain provisions of the statute. The power to determine what is salutary for the people of the state resides in the Legislature. It is not the function of the court to determine whether the public policy which finds expression in legislation of this character is well or ill conceived. *Williams v. Mayor and City Council of Baltimore*, 289 U. S. 36, 42, 53 S. Ct. 431, 433, 77 L. Ed. 1015. As stated by this court on the previous appeal in this cause, if the policy of the statutes is to be expanded, it must be done by the Legislature."

As I see it, the result of the majority opinion is to "legislate" into the statute an otherwise nonexistent *third classification* in the definition of "Resident," which, as already indicated, creates *two* classifications, *i.e.*, "Resident" and "nonresident," "nonresident" being all persons ("Individuals" as defined) not "Residents." What the majority has done, in effect, in my opinion, is to add to § 279(i) (the definition of "Resident") the following provision: "provided, however, that contingent remain-

dermen in any fiduciary estate shall not be included in this definition." As the cases already referred to indicate, this we may not do inasmuch as this type of addition to the statute is a legislative and not a judicial function. It was suggested at argument that the present situation was not foreseen when the Act of 1967 was passed and that there is an inadvertent omission in the statute. If this be assumed to be correct, *arguendo*, the supplying of that omission is for the General Assembly and not for this Court.

As this Court stated in *Rogan v. Baltimore & Ohio R. R. Co., supra* (188 Md. 44, 54, 52 A. 2d 261, 266 (1947)) :

> "If the case is omitted in the statute because not foreseen or contemplated, it is a *casus omissus,* and the Court, having no legislative power, cannot supply the defects of the enactment. Even if a statute is incomplete, so that it cannot be complied with without additional provisions which are not indicated by the act itself, the court cannot supply such defects so as to give validity to the act."

### (c)

Finally, it might be noted that the majority view may well have frustrated one of the envisioned principal purposes of the exclusion from the scope of the application of § 313 (b) (see Footnote 2 of the majority opinion) — to make Maryland fiduciaries competitive with fiduciaries in other states. It is apparent to me that by subjecting a Maryland fiduciary for *all* contingent remaindermen to the Maryland income tax is a rather effective way of eliminating Maryland fiduciaries from obtaining the trust business of out-of-State persons whose contingent remaindermen are most likely to reside outside of the State of Maryland. This Court upon the necessarily meager record in the present case cannot effectively evaluate the financial impact upon the State and its economy of the present holding of the majority. Such an evalua-

tion is for the legislative branch where all interested parties in the basic competitive problem may be heard, present their evidence and arguments and a sound legislative decision could hopefully be reached. I believe the holding of the majority makes Maryland corporate fiduciaries *less competitive* with out-of-State corporate fiduciaries, and hence frustrates one of the likely purposes of the 1967 amendment.

For all of these reasons, I would reverse. I am authorized to state that Judges McWilliams and Digges concur in the views herein expressed.